**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| BLAKE MATHIAS, individually and as | ) | |
| shareholder representative for TunStall | ) | |
| Communications, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. _____ |
| vs. | ) | |
| | ) | |
| MATTHEW TUNSTALL; | ) | **JURY TRIAL DEMANDED FOR** |
| TUNSTALL COMMUNICATIONS, INC.; | ) | **ALL COUNTS EXCEPT COUNT** |
| STALL TALK.NET, INC.; and | ) | **X** |
| GEO-TALK.COM, INC. | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

COMES NOW Plaintiff Blake Mathias, by and through his undersigned counsel, and for his Complaint against Defendants Matt Tunstall, TunStall Communications, Inc., Stall Talk.Net, Inc., and Geo-Talk.com, Inc. (collectively "Defendants") states as follows:

## PARTIES, JURISDICTION, AND VENUE

1.    Plaintiff Blake Mathias ("Plaintiff" or "Mr. Mathias") is an individual residing in Knox County, Tennessee.  Plaintiff is a shareholder of Defendant TunStall Communications, Inc.

2.    On information and belief, Defendant TunStall Communications, Inc. ("TunStall Communications") is a Tennessee corporation with its principal place of business located at 800 S. Gay St., Suite 747, Knoxville, Tennessee 37929 (the "Principal Address"), which is in Knox County, Tennessee.  On information and belief, its registered agent is Matthew Barocas and the registered agent's address is 800 S. Gay Street, Suite 700, Knoxville, Tennessee 37929.

3.    On information and belief, Defendant Stall Talk.Net, Inc. ("Stall Talk") is a Tennessee corporation with its principal place of business located at 800 S. Gay St., Suite 746,

Knoxville, Tennessee 37929, which is in Knox County, Tennessee. On information and belief, its registered agent is Matthew Barocas and the registered agent's address is 800 S. Gay Street, Suite 700, Knoxville, Tennessee 37929.

4.  On information and belief, Defendant Geo-Talk.com, Inc. ("Geo Talk") is a Tennessee corporation with its principal place of business located at 800 S. Gay St., Suite 700, Knoxville, Tennessee 37929, which is in Knox County, Tennessee.

5.  On information and belief, Defendant Matthew Tunstall ("Mr. Tunstall" or "Matt Tunstall") is the President, Chief Operating Officer, and a Board Member of TunStall Communications, Stall Talk, and Geo Talk, and resides at 723 Whispering Hills Lane, Knoxville, Tennessee 37934, which is in Knox County, Tennessee.

6.  Matt Tunstall dominates and controls TunStall Communications, Stall Talk, and Geo Talk. On information and belief, Matt Tunstall is the only acting director for TunStall Communications, Stall Talk, and Geo Talk. As alleged further herein, Matt Tunstall has used his position to dictate the actions of these companies.

7.  On information and belief, TunStall Communications, Stall Talk, and Geo Talk do not maintain a separate corporate existence, do not keep separate books and records, are commonly controlled and operated by Matt Tunstall as a single corporate enterprise, and are held out as a single corporate enterprise and/or alter ego of one another. On further information and belief, TunStall Communications, Stall Talk, and Geo Talk intermingle funds and accounts so that they operate as a single corporate enterprise and/or alter ego of one another.

8.  This Court has federal question jurisdiction under 28 U.S.C. § 1331. Counts II and V allege violations of federal securities laws, namely 15 U.S.C. § 77e and 15 U.S.C. § 77*l*.

Pursuant to 28 U.S.C. § 1367(a), this Court's original jurisdiction under 28 U.S.C. § 1331 provides this Court with supplemental jurisdiction over all of Plaintiff's claims.

9.      This Court has personal jurisdiction over TunStall Communications, Stall Talk, and Geo Talk as they are incorporated under the laws of the State of Tennessee, have their principal place of business in Knox County, Tennessee, and engage in business in the State of Tennessee. This Court has personal jurisdiction over Defendant Matt Tunstall as he is a resident of Tennessee. Further, Plaintiff's claims arise out of acts taken by the Defendants in the State of Tennessee.

10.      Venue in this judicial district is proper under 28 U.S.C. § 1391(a)(2) because a substantial portion of the events giving rise to this litigation occurred in this judicial district.

## GENERAL ALLEGATIONS

### A.      Defendants Fraudulently Induced Plaintiff to Invest $500,000.00 in TunStall Communications

11.      During the winter of 2013-14, Matt Tunstall solicited Mr. Mathias to invest in TunStall Communications.

12.      In soliciting Mr. Mathias, Matt Tunstall represented to Mr. Mathias that TunStall Communications operated under the name "Stall Talk" and was in the business of selling advertising space on portable toilets ("port-a-potties"). Matt Tunstall held out TunStall Communications and Stall Talk as being the same company and a single entity (herein referred to as the "Company").

13.      Matt Tunstall failed to disclose that TunStall Communications and Stall Talk are registered under separate corporate charters and thus, at the outset, misled Mr. Mathias as to the nature of the company in which he was investing.

14.     On information and belief, Matt Tunstall convinced Mr. Mathias to invest in TunStall Communications for the purposes of using Mr. Mathias' money as little more than a slush fund to dole out payments to other business ventures in which Matt Tunstall has conflicting interests, to pay for Matt Tunstall's personal expenses, and other improper purposes as further detailed herein.

15.     Matt Tunstall achieved this result through the use of a host of fraudulent and misleading written and oral statements. In doing so, Matt Tunstall was acting as an officer, director, and agent of Stall Talk and TunStall Communications, or with apparent authority from Stall Talk and TunStall Communications.

16.     On or about February 14, 2014, and in reliance on these false and misleading representations, Mr. Mathias entered into a Stock Purchase Agreement with TunStall Communications (the "Stock Purchase Agreement"). A true and accurate copy of the Stock Purchase Agreement is attached hereto as **Exhibit 1**.

17.     Mr. Mathias then invested $500,000.00, via check and wire transfer payable to TunStall Communications – and to purported vendors of TunStall Communications. In exchange, Mr. Mathias received 200,000 shares of TunStall Communications stock (the "Investment").

18.     After making his Investment, Mr. Mathias learned that the Stock Purchase Agreement and his Investment were procured by fraud. Mr. Mathias learned of this fraud through former employees of TunStall Communications, including (but not limited to) its Chief Revenue Officer, Jake Kovalcik.

    a.  **The False Prospectus**

19.     On January 15, 2014, Matt Tunstall emailed Mr. Mathias the document attached hereto as **Exhibit 2** (hereinafter referred to as the "Prospectus") using the email address "mtunstall@stalltalk.net".

20.     The Prospectus contained numerous false statements and/or omissions of material facts about, among other things, the Company's existing book of business, its past and current financial status, and its future projections.

21.     As an example, Page 7 of the Prospectus represents that the Company had "multi-year, exclusive contracts to 20.1% of all portable toilets in the United States", representing at least "302,000 potties" in "84 cities in 27 states." The clear implication of these statements is that the Company already had these contracts in place and had the capability to service them.

22.     The Company, though, never had such contracts. Instead, its existing operations were, at best, minimal. Further, it did not even have the necessary capabilities and infrastructure to operate nationally on the scale represented.

23.     Among other things, the Company did not have adequate suppliers in place that could produce sufficient vinyl ads for the port-a-potties in a number that would have been necessary to operate on the represented scale contained in the Prospectus. In short, the Company did not have contracts for, and could not have serviced 302,000 port-a-potties in 84 different cities.

24.     Page 7 of the Prospectus further represents that the Company had multi-year, exclusive contracts with NASCAR, the NFL, the PGA, Taste of Chicago, Lollapalooza, and the University of Tennessee, Knoxville. Next to the claim that the Company had "multi-year, exclusive contracts", the Prospectus lists the symbols for NASCAR, the NFL, the PGA, and the University of Tennessee, Knoxville, and further has pictures of crowds of people with the words

"Taste of Chicago" and "Lollapalooza" superimposed on them. The clear implication and intended representation is that the Company had multi-year, exclusive contracts with these associations and events.

25. The Company did not have multi-year, exclusive contracts with these associations or for these events.

26. Pages 9 and 12 of the Prospectus purport to represent the Company's prior financial success as well as projections of the Company's future financial success. Those numbers are false, misleading, lack any basis in fact, and are not justified by any reasonable accounting principles or expectations of future performance.

27. Page 9 of the Prospectus claims the Company had $3,183,385.00 in revenue during 2013 and pre-tax income of $403,233.00.

28. In reality, the Company's revenue stream was limited. In 2013, the Company did not receive anywhere near $3,183,385.00 in revenue during 2013 and the Company did not turn a profit.

29. Further, the future projections for 2014 and beyond are similarly misleading, are not based on the Company's actual performance, and are not justified by any reasonable accounting principal or expectation of future performance.

30. For instance, the Prospectus lists projected revenue of $20,663,022.00 and pre-tax income of $7,396,724 for 2014.

31. The Company's former Chief Revenue Officer, Mr. Kovalcik, confirmed that based on his experience and his knowledge of the Company, an estimate of even only $1,000,000.00 in revenue for 2014 would have been unjustifiably optimistic. Further, it would have been unreasonable to expect that the Company would turn a profit in 2014.

32.     Mr. Kovalcik cannot recall a single piece of revenue that came in during the entire time that he was the Chief Revenue Officer for the Company, much less revenue significant enough to justify the financial statements in the Prospectus.

33.     Likewise, the financials listed in page 12 of the Prospectus are false, misleading, lack any basis in fact, and are not justified by any reasonable accounting principles or expectations of future performance.

### b.     Other False Representations

34.     In addition to the false and misleading Prospectus, Matt Tunstall made numerous additional fraudulent representations to Mr. Mathias to induce Mr. Mathias to invest in the Company. These representations were made through various means and instrumentalities of interstate commerce, including phone calls, text messages, and email communications.

35.     Matt Tunstall hyped the Company by falsely claiming it had business that it did not. For example, Matt Tunstall claimed that the Company had exclusive contracts with IMG (a global sports, fashion, and media business), East Tennessee Portables (a leading portable toilet company in eastern Tennessee), and other companies.

36.     On information and belief, the Company did not have exclusive contracts in place with these companies.

37.     Matt Tunstall also reiterated the false claims in the Prospectus that the Company had a substantial presence in numerous large cities throughout the United States.

38.     Additionally, because Mr. Mathias would essentially be the primary source of investment capital for the Company, he wanted the ability to check the status of the Company funds periodically.

39.     Matt Tunstall represented and promised that Mr. Mathias' investment and other Company funds would be placed in a single Bank of America account (the "Bank of America Account") and that Matt Tunstall would name Mr. Mathias on the Bank of America Account so that Mr. Mathias could monitor the account.

40.     Matt Tunstall's representations about the Bank of America Account were false. Matt Tunstall has never named Mr. Mathias on the Bank of America Account or any other bank account in which Mr. Mathias' investment was deposited.  Further, on information and belief, he never intended to do so.

41.     Further, Matt Tunstall did not, as represented and promised, maintain Mr. Mathias' Investment and other Company funds in the Bank of America Account. Instead, after taking Mr. Mathias' money, Matt Tunstall has secreted away or hid Mr. Mathias' Investment and other Company funds by either (1) not placing them in the Bank of America Account in the first instance; or (2) transferring those assets out of the Bank of America Account to other unknown accounts.

42.     By way of example, sometime after Mr. Mathias had invested in the Company, Matt Tunstall unilaterally transferred $100,000.00 out of the Bank of America account into an unknown second account. On information and belief, those funds constitute and/or were used to finance some of the inappropriate transfers and expenditures further detailed herein.

43.     Further, Matt Tunstall misled Mr. Mathias as to the business in which the Company would be engaged. Matt Tunstall represented to Mr. Mathias that the Company was in the business of advertising on port-a-potties. This was particularly important because Matt Tunstall and the Company had received recognition and various accolades for the unique concept

of applying advertising to port-a-potties. Indeed, the only business referenced in the Prospectus is the port-a-potty advertising concept.

44.	At no time before Mr. Mathias entered the Stock Purchase Agreement and made the Investment did Matt Tunstall inform Mr. Mathias or otherwise suggest that the Company was engaged in any other type of business.

45.	However, at the same time that Matt Tunstall was pitching the Company to Mr. Mathias as a port-a-potty advertising company, Matt Tunstall was planning to have TunStall Communications finance a wholly unrelated business. In particular, Matt Tunstall was planning to have TunStall Communications enter into a partnership with two individuals to create and sell pop-up, cardboard chairs that resemble a cardboard box (the "Box Chair Venture").

46.	Matt Tunstall never informed Mr. Mathias of the Box Chair Venture before Mr. Mathias executed the Stock Purchase Agreement and invested in the Company.

47.	Mr. Mathias would not have entered the Stock Purchase Agreement or made the Investment had he known of the Box Chair Venture.

48.	On information and belief, within days of receiving funds from Mr. Mathias as part of the Investment, Matt Tunstall transferred at least $22,500.00 of those funds to the Box Chair Venture as initial seed money. Since then, Matt Tunstall has continuously caused TunStall Communications to divert Mr. Mathias' Investment to the Box Chair Venture.

**B.	After Taking Plaintiff's Money, Defendants Wasted TunStall Communications' Funds, and Engaged in Self-Dealing and *Ultra Vires* Transactions**

49.	In addition to the above-described fraud, Mr. Mathias has also come to learn that Mr. Tunstall has breached and continues to breach fiduciary duties owed to him and TunStall Communications.

50.    As a director and officer of the TunStall Communications, Matt Tunstall owes fiduciary duties of care, oversight, loyalty, good faith, fair dealing, and disclosure. Further, Matt Tunstall owes fiduciary duties to account for expenditures of TunStall Communications funds.

51.    In carrying out the business of TunStall Communications, Matt Tunstall and TunStall Communications are required to observe the requirements of the Tennessee Business Corporations Act, T.C.A. § 48-11-101, *et seq.*

52.    Under the Tennessee Business Corporations Act, the business of TunStall Communications is to be carried out by formal action of the board of directors at regular or special meetings, or through formal and recorded written consents.

53.    Matt Tunstall caused TunStall Communications to enter into a partnership agreement for the Box Chair Venture. Such action required the formal approval of the Board of Directors.

54.    On information and belief, the Box Chair Venture was not formally approved as required by the Tennessee Business Corporations Act, and thus, TunStall Communication's participation in the Box Chair Venture is *ultra vires* and void.

55.    Nonetheless, Matt Tunstall has caused tens of thousands of dollars of TunStall Communications' funds to finance the Box Chair Venture.

56.    In addition to causing the company to engage in *ultra vires* contracts with the Box Chair Venture, Matt Tunstall has also caused TunStall Communications to transfer money to, or to otherwise pay the expenses of, companies in which Matt Tunstall has a material financial interest.

57.    On information and belief, Matt Tunstall has intermingled TunStall Communications' funds and accounts with Stall Talk's funds and accounts, and has caused

TunStall Communication's funds to be transferred to or otherwise used to pay expenses of Stall Talk.

58.     On or about May 28, 2014, Matt Tunstall incorporated Geo Talk. On information and belief, Matt Tunstall formed Geo Talk to sell software.

59.     On further information and belief, Matt Tunstall has intermingled TunStall Communications' funds and accounts with Geo Talk's funds and accounts, and has caused TunStall Communication's funds to be transferred to or otherwise used to pay expenses of Geo Talk.

60.     Matt Tunstall has a material financial interest in both Stall Talk and Geo Talk.

61.     On information and belief, these transfers to and payments for Stall Talk and Geo Talk were gratuitous, made without sufficient consideration or benefit to TunStall Communications, were unfair to TunStall Communications, and constitute a waste of TunStall Communications' assets.

62.     In essence, Matt Tunstall has been using TunStall Communications and Mr. Mathias' Investment as a slush fund to dole out money to and pay expenses for Matt Tunstall's other business ventures.

63.     Moreover, on further information and belief, these payments and transfers were not approved by formal board action and are, thus, *ultra vires* and void.

64.     Matt Tunstall has further breached his fiduciary duties by causing TunStall Communications' to pay for personal expenses, including multiple lavish trips that, on information and belief, were little more than personal junkets.

65.     In just the past few months, Matt Tunstall has made multiple trips to New York, two trips to Dubai, as well as trips to China, France, Italy, New York, Boston, Los Angeles, and

Washington D.C. On information and belief, these trips were not for the benefit of TunStall Communications, but and instead were personal vacations for Matt Tunstall or were for the promotion of Matt Tunstall's other business ventures.

66.     On information and belief, Matt Tunstall has kept the TunStall Communication's books and records in disarray to conceal his fraud and breaches of fiduciary duty.

67.     Pursuant to T.C.A. § 48-26-101 and § 48-26-201, TunStall Communications is required to prepare and keep appropriate accounting records, annual financial statements, and other corporate books and records. Matt Tunstall has caused TunStall Communications to violate these provisions by failing to keep any semblance of organized records of its revenue and expenses.

68.     On information and belief, TunStall Communications has not, in any organized fashion, appropriately kept track of corporate expenditures or documented the corporate purpose of those expenditures.

69.     On information and belief, Matt Tunstall knew of these failures yet failed to take action to correct them, and indeed, refused to do so. For example, shortly after he was hired, the Company's now-former Chief Revenue Officer, Mr. Kovalcik, attempted to employ the use of expense reports to document corporate expenditures and their corporate purposes.  Matt Tunstall ignored these attempts.

70.     Further, pursuant to T.C.A. § 48-26-201, TunStall Communications is required to prepare annual financial statements and provide shareholders with copies of those financial statements upon request.

71.     Mr. Mathias, on numerous occasions, requested that Matt Tunstall provide him with the annual financial statements for TunStall Communications.  For a period of time, Matt Tunstall repeatedly refused and failed to provide any annual financial statements.

72.     On information and belief, TunStall Communications never had annual financial statements prepared, and Matt Tunstall has refused to have an accountant prepare these statements and present them to Mr. Mathias because doing so would only demonstrate Matt Tunstall's improper conduct.

73.     Mr. Mathias is the only major source of investment capital for the Company, and the Company lacks significant sources of revenue, such that Matt Tunstall's misuse of funds as described herein is a present and ongoing threat to Mr. Mathias' ability to protect his invested capital.

## COUNT I: SALE OF UNREGISTERED SECURITIES
## IN VIOLATION OF T.C.A. § 48-1-101
### (Against All Defendants)

74.     Plaintiff hereby adopts and incorporates paragraphs 1 through 73 of this Complaint as if set forth fully herein.

75.     The stock offered for sale under the Stock Purchase Agreement, as well as the stock actually purchased by Mr. Mathias thereunder, are "securities" pursuant to the Tennessee Securities Act, T.C.A. § 48-1-102.

76.     The purchase of the stock by Mr. Mathias constitutes a sale of securities under T.C.A. § 48-1-102. Likewise, the Stock Purchase Agreement is a "contract of sale of [or] contract to sell" securities and an offer to sell securities, and thus constitutes both a "sale" of and an "offer to sell" securities under T.C.A. § 48-1-102.

77. Pursuant to T.C.A. § 48-1-104, Defendants were prohibited from selling these securities unless the securities were registered under the Tennessee Securities Act.

78. On information and belief, Defendants did not register these securities as required.

79. Defendants violated T.C.A. § 48-1-104 by selling these securities to Plaintiff without first registering them as required.

80. Pursuant to T.C.A. § 48-1-122, Plaintiff is entitled to recover from all Defendants rescissory damages plus interest and attorney's fees.

81. TunStall Communications and Stall Talk are liable for the misconduct of Matt Tunstall under T.C.A. § 48-1-122(g) because they had the power, directly or indirectly, to control the activities of Matt Tunstall.

82. TunStall Communications and Stall Talk are liable for the misconduct of Matt Tunstall under the doctrines of *respondeat superior* and agency liability because Matt Tunstall was an employee and/or agent of TunStall Communications and Stall Talk, and was acting on behalf of or with apparent authority from the same.

83. Geo Talk is liable as for the misconduct of the other Defendants as it is an alter ego of the other Defendants.

WHEREFORE, Plaintiff respectfully prays that the Court enter Judgment in favor of Plaintiff and against Defendants:

(a) Rescinding and unwinding the Stock Purchase Agreement and Plaintiff's Investment and ordering the return of all monies expended by Plaintiff in connection with the Stock Purchase Agreement and his Investment;

(b)     For punitive damages in an amount proper to punish Defendants for their wrongful actions;

(c)     For pre-judgment and post-judgment interest, and Plaintiff's costs and attorney's fees as may be allowed by law;

(d)     For such further and additional relief as the Court deems just and proper.

## COUNT II: SALE OF UNREGISTERED SECURITIES IN VIOLATION OF § 5 OF THE SECURITIES ACT, 15 U.S.C. § 77e
### (Against All Defendants)

84.     Plaintiff hereby adopts and incorporates paragraphs 1 through 83 of this Complaint as if set forth fully herein.

85.     The stock purchased by Mr. Mathias, as well as the stock offered in the Stock Purchase Agreement, is a "security" pursuant to the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77b.

86.     The purchase of the stock by Mr. Mathias constitutes a "sale" of securities under 15 U.S.C. § 77b. Likewise, the Stock Purchase Agreement is a "contract of sale" as well as an offer of sale of securities, and thus constitutes both a sale and an offer of sale of securities under 15 U.S.C. § 77b.

87.     Pursuant to 15 U.S.C. § 77e, unless such securities were registered as required by the Securities Act, Defendants were prohibited making use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell or offer to sell such securities.

88.     On information and belief, Defendants did not register these securities as required.

89.     Defendants violated 15 U.S.C. § 77e by making use of means or instruments of transportation or communication in interstate commerce or of the mails to sell and offer to sell such securities to Plaintiff without first registering them as required.

90.     Pursuant to 15 U.S.C. § 77*l*, Plaintiff is entitled to recover from all Defendants rescissory damages plus interest.

91.     TunStall Communications and Stall Talk are liable for the misconduct of Matt Tunstall under 15 U.S.C. § 77o because they had the power, directly or indirectly, to control the activities of Matt Tunstall.

92.     TunStall Communications and Stall Talk are liable for the misconduct of Matt Tunstall under the doctrines of *respondeat superior* and agency liability because Matt Tunstall was an employee and/or agent of TunStall Communications and Stall Talk, and was acting on behalf of or with apparent authority from the same.

93.     Geo Talk is liable as for the misconduct of the other Defendants as it is an alter ego of the other Defendants.

WHEREFORE, Plaintiff respectfully prays that the Court enter Judgment in favor of Plaintiff and against Defendants:

(a)     Rescinding and unwinding the Stock Purchase Agreement and Plaintiff's Investment and ordering the return of all monies expended by Plaintiff in connection with the Stock Purchase Agreement and his Investment;

(b)     For punitive damages in an amount proper to punish Defendants for their wrongful actions;

(c)     For pre-judgment and post-judgment interest, and Plaintiff's costs and attorney's fees as may be allowed by law;

(d)     For such further and additional relief as the Court deems just and proper.

## COUNT III: COMMON LAW FRAUD AND MISREPRESENTATION
### (Against All Defendants)

94.     Plaintiff hereby adopts and incorporates paragraphs 1 through 93 of this Complaint as if set forth fully herein.

95.     In connection with the execution of the Stock Purchase Agreement and Plaintiff's Investment, Defendants intentionally, recklessly, and/or negligently employed devices, schemes and artifices to defraud, made material misrepresentations, failed to disclose material information, and engaged in acts, practices, and a course of business which operated as a fraud or deceit on Plaintiff.

96.     Plaintiff reasonably relied on the Prospectus and the Defendants' other representations and was unaware of the true facts.

97.     Plaintiff has been damaged as a result of Defendants' misconduct.

98.     Pursuant to the common law of Tennessee, Plaintiff is entitled to recover from all Defendants rescissory damages plus interest. Plaintiff is entitled to recover punitive damages to punish the Defendants' willful misconduct and conscious disregard of Plaintiff's rights.

99.     TunStall Communications and Stall Talk are liable for the misconduct of Matt Tunstall under the doctrines of *respondeat superior* and agency liability because Matt Tunstall was an employee and/or agent of TunStall Communications and Stall Talk, and was acting on behalf of or with apparent authority from the same.

100.    Geo Talk is liable as for the misconduct of the other Defendants as it is an alter ego of the other Defendants.

WHEREFORE, Plaintiff respectfully prays that the Court enter Judgment in favor of Plaintiff and against Defendants:

(a)     Rescinding and unwinding the Stock Purchase Agreement and Plaintiff's Investment and ordering the return of all monies expended by Plaintiff in connection with the Stock Purchase Agreement and his Investment;

(b)     For punitive damages in an amount proper to punish Defendants for their wrongful actions;

(c)     For pre-judgment and post-judgment interest, and Plaintiff's costs and attorney's fees as may be allowed by law;

(d)     For such further and additional relief as the Court deems just and proper.

## COUNT IV: FRAUD IN CONNECTION WITH THE SALE OF SECURITIES IN VIOLATION OF T.C.A. § 48-1-121
### (Against All Defendants)

101.    Plaintiff hereby adopts and incorporates paragraphs 1 through 100 of this Complaint as if set forth fully herein.

102.    The stock offered for sale under the Stock Purchase Agreement, as well as the stock actually purchased by Mr. Mathias thereunder, are "securities" under T.C.A. § 48-1-102.

103.    The purchase of the stock by Mr. Mathias constitutes a sale of securities under T.C.A. § 48-1-102. Likewise, the Stock Purchase Agreement is a "contract of sale of [or] contract to sell" securities and an offer to sell securities, and thus constitutes both a sale of and an offer to sell securities under T.C.A. § 48-1-102.

104.    In connection with the offer and sale of the securities described herein, Defendants intentionally, recklessly, and/or negligently employed devices, schemes and artifices to defraud, made material misrepresentations, failed to disclose material information, and engaged in acts, practices, and a course of business which operated as a fraud or deceit on Plaintiff, all in violation of T.C.A. § 48-1-121 and actionable under T.C.A. § 48-1-122.

105.     Plaintiff reasonably relied on Defendants' representations and was unaware of the true facts.

106.     Plaintiff has been damaged as a result of Defendants' misconduct.

107.     Pursuant to T.C.A. § 48-1-122, Plaintiff is entitled to recover from all Defendants rescissory damages plus interest and attorney's fees.

108.     TunStall Communications and Stall Talk are liable for the misconduct of Matt Tunstall under T.C.A. § 48-1-122(g) because they had the power, directly or indirectly, to control the activities of Matt Tunstall.

109.     TunStall Communications and Stall Talk are liable for the misconduct of Matt Tunstall under the doctrines of *respondeat superior* and agency liability because Matt Tunstall was an employee and/or agent of TunStall Communications and Stall Talk, and was acting on behalf of or with apparent authority from the same.

110.     Geo Talk is liable as for the misconduct of the other Defendants as it is an alter ego of the other Defendants.

WHEREFORE, Plaintiff respectfully prays that the Court enter Judgment in favor of Plaintiff and against Defendants:

(a)     Rescinding and unwinding the Stock Purchase Agreement and Plaintiff's Investment and ordering the return of all monies expended by Plaintiff in connection with the Stock Purchase Agreement and his Investment;

(b)     For punitive damages in an amount proper to punish Defendants for their wrongful actions;

(c)     For pre-judgment and post-judgment interest, and Plaintiff's costs and attorney's fees as may be allowed by law;

(d)      For such further and additional relief as the Court deems just and proper.

## COUNT V: USE OF FALSE PROSPECTUSES AND STATEMENTS
## IN VIOLATION § 12 OF THE SECURITIES ACT, 15 U.S.C. § 77*l*
### (Against All Defendants)

111.      Plaintiff hereby adopts and incorporates paragraphs 1 through 109 of this Complaint as if set forth fully herein.

112.      The stock purchased by Mr. Mathias, as well as the stock offered in the Stock Purchase Agreement, is a "security" pursuant to 15 U.S.C. § 77b.

113.      The purchase of the stock by Mr. Mathias constitutes a sale of securities under 15 U.S.C. § 77b. Likewise, the Stock Purchase Agreement is a "contract of sale" as well as an offer of sale of securities, and thus constitutes both a sale and an offer of sale of securities under 15 U.S.C. § 77b.

114.      The Prospectus is a "prospectus" under 15 U.S.C. § 77b, as are the other written misrepresentations made by Defendants as alleged herein.

115.      Defendants violated 15 U.S.C. § 77*l* by offering and selling the securities alleged herein, to Plaintiff, by the use of means or instruments of transportation or communication in interstate commerce or of the mails, by means of prospectuses and oral communications that included untrue statements of a material fact or omitted to state material facts necessary in order to make the statements not misleading.

116.      Plaintiff reasonably relied on these prospectuses and representations and was unaware of the true facts.

117.      Plaintiff has been damaged as a result of Defendants' misconduct.

118.      Pursuant to 15 U.S.C. § 77*l*, Plaintiff is entitled to recover from all Defendants rescissory damages plus interest.

119. TunStall Communications and Stall Talk are liable for the misconduct of Matt Tunstall under 15 U.S.C. § 77o because they had the power, directly or indirectly, to control the activities of Matt Tunstall.

120. TunStall Communications and Stall Talk are liable for the misconduct of Matt Tunstall under the doctrines of *respondeat superior* and agency liability because Matt Tunstall was an employee and/or agent of TunStall Communications and Stall Talk, and was acting on behalf of or with apparent authority from the same.

121. Geo Talk is liable as for the misconduct of the other Defendants as it is an alter ego of the other Defendants.

WHEREFORE, Plaintiff respectfully prays that the Court enter Judgment in favor of Plaintiff and against Defendants:

(a) Rescinding and unwinding the Stock Purchase Agreement and Plaintiff's Investment and ordering the return of all monies expended by Plaintiff in connection with the Stock Purchase Agreement and his Investment;

(b) For punitive damages in an amount proper to punish Defendants for their wrongful actions;

(c) For pre-judgment and post-judgment interest, and Plaintiff's costs and attorney's fees as may be allowed by law;

(d) For such further and additional relief as the Court deems just and proper.

## COUNT VI: VIOLATION OF TENNESSEE CONSUMER PROTECTION ACT, T.C.A. § 47-18-104
### (Against All Defendants)

122. Plaintiff hereby adopts and incorporates paragraphs 1 through 123 of this Complaint as if set forth fully herein.

123. The securities purchased by Plaintiff as alleged herein are "goods" pursuant to T.C.A. § 47-18-103. Plaintiff purchased said securities primarily for personal, family, or household purposes.

124. By selling these securities, Defendants engaged in "trade", "commerce", or a "consumer transaction" under T.C.A. § 47-18-103.

125. As alleged elsewhere herein, Defendants' sales of the securities were illegal and unlawful.

126. Defendants engaged in unfair or deceptive acts or practices affecting the conduct of any trade or commerce in violation of T.C.A. § 47-18-104(b)(43) by selling goods that were illegal or unlawful to sell in this State.

127. Plaintiff suffered an ascertainable loss of money as a result of Defendants' misconduct, and pursuant to T.C.A. § 47-18-109 is entitled to recover from Defendants his actual damages, interests, and costs and fees (including attorney's fees).

128. On information and belief, Defendants' violations were willful and/or knowing, thereby entitling Plaintiff to treble damages under T.C.A. § 47-18-109.

129. TunStall Communications and Stall Talk are liable for the misconduct of Matt Tunstall under the doctrines of *respondeat superior* and agency liability because Matt Tunstall was an employee and/or agent of TunStall Communications and Stall Talk, and was acting on behalf of or with apparent authority from the same.

130. Geo Talk is liable as for the misconduct of the other Defendants as it is an alter ego of the other Defendants.

WHEREFORE, Plaintiff respectfully prays that the Court enter Judgment in favor of Plaintiff and against Defendants:

(a)     For an award of Plaintiff's actual damages;

(b)     For an award of treble damages, as permitted by law;

(c)     For pre-judgment and post-judgment interest, and Plaintiff's costs and attorney's fees as may be allowed by law;

(d)     For such further and additional relief as the Court deems just and proper.

## COUNT VII: DERIVATIVE CLAIM FOR BREACH OF FIDUCIARY DUTIES
### (Against Matt Tunstall, Stall Talk, and Geo Talk)

131.    Plaintiff hereby adopts and incorporates paragraphs 1 through 30 of this Complaint as if set forth fully herein.

132.    As a director and officer of TunStall Communications, Matt Tunstall owes fiduciary duties of care, oversight, loyalty, good faith, fair dealing and disclosure. Further, Matt Tunstall owes fiduciary duties to account for expenditures of corporate funds.

133.    On information and belief, Matt Tunstall has breached and continues to breach these duties in numerous ways, including, but not limited to:

(a) Failing to properly account for the use of corporate funds;

(b) Using corporate funds for personal purposes, including lavish trips for himself;

(c) Causing TunStall Communications to engage in transactions in which Matt Tunstall has a material financial interest, and which were unfair to TunStall Communications;

(d) Causing TunStall Communications to engage in *ultra vires* transactions;

(e) Making false statements to and failing to disclose material information to TunStall Communication's' shareholders;

(f) Generally wasting the assets of TunStall Communications.

134. TunStall Communications and its shareholders have been damaged as a result of Matt TunStall's misconduct. Matt Tunstall's misconduct was willful and in conscious disregard of the rights of TunStall Communications and its shareholders so as to warrant the imposition of punitive damages.

135. Plaintiff is entitled to pursue this action on behalf of TunStall Communications without making demand on TunStall Communications because such demand would be futile. Matt Tunstall dominates and controls TunStall Communications and Matt Tunstall's wrongful actions are the subject of these claims. It would be futile to demand that Matt Tunstall sue himself.

WHEREFORE, Plaintiff respectfully prays that the Court enter Judgment in favor of Plaintiff, as derivative representative for TunStall Communications, and against Defendant Matt Tunstall:

(a)     Requiring Matt Tunstall to provide an accounting of all uses of corporate funds since the date Plaintiff first became a shareholder;

(b)     For the appointment of a receiver over TunStall Communications, its accounts, and other assets, during the pendency of this litigation;

(c)     For actual damages sustained by TunStall Communications as a result of Matt Tunstall's breaches of fiduciary duty;

(d)     For punitive damages in an amount proper to punish Matt Tunstall for his wrongful actions;

(e)     For pre-judgment and post-judgment interest, and Plaintiff's costs and attorney's fees as may be allowed by law;

(f)     For such further and additional relief as the Court deems just and proper.

## COUNT VIII: DERIVATIVE CLAIM FOR AIDING AND ABETTING AND VICARIOUS LIABILITY FOR MATT TUNSTALL'S BREACH OF FIDUCIARY DUTIES
### (Against Stall Talk and Geo Talk)

136.    Plaintiff hereby adopts and incorporates paragraphs 1 through 135 of this Complaint as if set forth fully herein.

137.    As alleged herein, Matt Tunstall has breached his fiduciary duties to TunStall Communications by causing TunStall Communications funds to be transferred to, or used to pay the expenses of, Stall Talk and Geo Talk.

138.    These breaches of fiduciary duty have damaged TunStall Communications.

139.    Stall Talk and Geo Talk received the benefit of those improper transactions.

140.    In carrying out those improper transactions, Matt Tunstall was acting as an employee and/or agent Stall Talk and Geo Talk, and was acting on behalf of or with apparent authority from the same. Thus, Geo Talk and Stall Talk are liable for this under the doctrines of *respondeat superior* and agency liability.

141.    Further, Geo Talk and Stall Talk, through their agent and employee, Matt Tunstall, materially aided and abetted these breaches of fiduciary duty.

142.    Geo Talk and Stall Talks misconduct was willful and in conscious disregard of the rights of TunStall Communications and its shareholders so as to warrant the imposition of punitive damages.

143.    Plaintiff is entitled to pursue this action on behalf of TunStall Communications without making demand on TunStall Communications because such demand would be futile. Matt Tunstall dominates and controls TunStall Communications, Stall Talk, and Geo Talk, and Matt Tunstall's wrongful actions are the subject of these claims. It would be futile to demand

that Matt Tunstall sue companies he controls and of which he is the president and board member, for claims arising from his own misconduct.

WHEREFORE, Plaintiff respectfully prays that the Court enter Judgment in favor of Plaintiff, as derivative representative for TunStall Communications, and against Defendants Stall Talk and Geo Talk:

(a)     Imposing a constructive trust over all funds transferred from TunStall Communications to Geo Talk or Stall Talk since the date Plaintiff first became a shareholder;

(b)     For the appointment of a receiver over Stall Talk and Geo Talk, their accounts, and other assets, during the pendency of this litigation;

(c)     For actual damages sustained by TunStall Communications;

(d)     For punitive damages in an amount proper to punish Matt Tunstall for his wrongful actions;

(e)     For pre-judgment and post-judgment interest, and Plaintiff's costs and attorney's fees as may be allowed by law;

(f)     For such further and additional relief as the Court deems just and proper.

## COUNT IX: DERIVATIVE CLAIM FOR UNJUST ENRICHMENT
### (Against Stall Talk and Geo Talk)

144.     Plaintiff hereby adopts and incorporates paragraphs 1 through 143 of this Complaint as if set forth fully herein.

145.     TunStall Communications, through the wrongful transactions and transfers initiated by Matt Tunstall, conferred benefits upon Geo Talk and Stall Talk.

146.     Geo Talk and Stall Talk appreciated the benefits of those wrongful transactions and transfers.

147. Allowing Geo Talk and Stall Talk to retain the benefit of those transactions and transfers, without repayment, would be unjust.

148. Plaintiff is entitled to pursue this action on behalf of TunStall Communications without making demand on TunStall Communications because such demand would be futile. Matt Tunstall dominates and controls TunStall Communications, Stall Talk, and Geo Talk, and Matt Tunstall's wrongful actions are the subject of these claims. It would be futile to demand that Matt Tunstall sue companies he controls and of which he is the president and board member, for claims arising from his own misconduct.

WHEREFORE, Plaintiff respectfully prays that the Court enter Judgment in favor of Plaintiff, as derivative representative for TunStall Communications, and against Defendants Stall Talk and Geo Talk:

(a) Imposing a constructive trust over all funds transferred from TunStall Communications to Geo Talk or Stall Talk since the date Plaintiff first became a shareholder;

(b) For the appointment of a receiver over Stall Talk and Geo Talk, their accounts, and other assets, during the pendency of this litigation;

(c) For the return payment of all TunStall Communications' funds transferred to Geo Talk or Stall Talk or otherwise used for the payment of expenses of Geo Talk or Stall Talk since the date Plaintiff first became a shareholder;

(e) For pre-judgment and post-judgment interest, and Plaintiff's costs and attorney's fees as may be allowed by law;

(f) For such further and additional relief as the Court deems just and proper.

## COUNT X: ATTACHMENT OF ASSETS TO PREVENT
## FURTHER FRAUDULENT DISPOSITION
### (Against All Defendants)

149.     Plaintiff hereby adopts and incorporates paragraphs 1 through 148 of this Complaint as if set forth fully herein.

150.     Tennessee Code § 29-6-101 allows for the attachment of property when a defendant has fraudulently disposed of or is about to fraudulently dispose of property.

151.     Plaintiff' Investment was placed in the Bank of America Account. The account details for the Bank of America Account are contained in **Exhibit 3** attached hereto under seal.

152.     As alleged herein, Plaintiff's Investment was procured by fraud. Since procuring his Investment, Defendants have been squandering and fraudulently disposing of those funds, including the funds in the Bank of America Account.

153.     Unless this Court enters an attachment on the Bank of America Account, Plaintiff will be irreparably damaged, Defendants' ongoing fraudulent depletion and disposition of funds from the account threatens to waste what little remains of Plaintiff's Investment.

WHEREFORE, Plaintiff respectfully prays that the Court enter Judgment in favor of Plaintiff, and against Defendants:

(a)     Attaching the Bank of America Account and preventing any further distributions therefrom during the pendency of this action; and

(b)     For such further and additional relief as the Court deems just and proper.

This 12th day of August, 2014.

Respectfully submitted,

BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.

By: s/ P.Edward Pratt
P. Edward Pratt
epratt@bakerdonelson.com
265 Brookview Centre Way, Suite 600
Knoxville, Tennessee 37919
Tel: (865) 549-7208
Fax: (865) 633-7208

GREENSFELDER, HEMKER & GALE, P.C.

Christopher Pickett, MO Bar #51059
(*pro hac vice* pending)
cap@greensfelder.com
Michael Schwalbert, MO Bar #63229
(*pro hac vice* pending)
ms@greensfelder.com
10 South Broadway, Suite 2000
St. Louis, Missouri 63102
Tel: (314)241-9090
Fax: (314)241-6965

*Attorneys for Plaintiff Blake Mathias*